1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GRACE CORRALES,                          Case No.  1:23-cv-01066-HBK

12                    Plaintiff,              ORDER DENYING PLAINTIFF'S MOTION
                                              FOR SUMMARY JUDGMENT, GRANTING
13          v.                                DEFENDANT'S MOTION FOR SUMMARY
                                              JUDGMENT, AND AFFIRMING THE
14   MARTIN O'MALLEY,                         DECISION OF THE COMMISSIONER OF
     COMMISSIONER OF SOCIAL                   SOCIAL SECURITY [2]
15   SECURITY,[1]
                                              (Doc. Nos.  13, 18)
16                    Defendant.

17

18

19          Grace Corrales ("Plaintiff") seeks judicial review of a final decision of the Commissioner

20   of Social Security ("Commissioner" or "Defendant") denying her application for supplemental

21   security income and disability insurance benefits under the Social Security Act.  (Doc. No. 1).

22   The matter is currently before the Court on the parties' briefs, which were submitted without oral

23   argument.  (Doc. Nos. 13, 18).  For the reasons set forth more fully below, the Court denies

24   Plaintiff's motion for summary judgment, grants Defendant's motion for summary judgment, and

25

26   [1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social
     Security, as the defendant in this suit.  *See* Fed. R. Civ. P. 25(d).
27   [2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C.
     §636(c)(1).  (Doc. No. 8).
28

affirms the Commissioner's decision.

## I.    JURISDICTION

Plaintiff protectively filed for supplemental security income and disability insurance benefits on April 9, 2009, alleging a disability onset date of June 1, 2008.  (AR 127-37).  Benefits were denied initially (AR 73-77), and upon reconsideration (AR 78-83).  Plaintiff appeared at a telephonic hearing before an Administrative Law Judge ("ALJ") on November 16, 2010.  (AR 46-63).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  On December 13, 2010, the ALJ issued an unfavorable decision.  (AR 23-38).   On July 24, 2012 the Appeals Council denied review (AR 1-6).  On December 18, 2013, the United States District Court for the Eastern District of California remanded the case for further proceedings.  (AR 745-60).  On remand, Plaintiff appeared before an ALJ on September 15, 2015.  (AR 692-715).  On October 7, 2015, the ALJ issued an unfavorable decision.  (AR 672-91).  On September 30, 2020 the Appeals Council denied review.  (AR 665-71).  On June 24, 2022, the United States District Court for the Eastern District of California again remanded the case for further proceedings.  (AR 1176-90).  On remand, Plaintiff appeared before an ALJ on December 21, 2022.  (AR 1128-55).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  On March 22, 2023, the ALJ issued a partially favorable decision, finding Plaintiff was not disabled as of November 22, 2017, and she has not become disabled again since that date.  (AR 1090-1127).  The matter is now before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 41 years old at the time of the third hearing.  (*See* AR 1133).  She received her GED and did "some" college but never completed any programs.  (AR 1133).  She lives with her husband.  (AR 1147).  Plaintiff had work history as a security guard, marker, cashier, and caregiver.  (AR 1133-35, 1150).  Plaintiff testified that she became unable to work because of dislocated discs in her lower back, depression, anxiety, and insomnia.  (AR 1136-37).  She

2

1    reported she has difficulty concentrating and has no strength when she wakes up in the morning

2    due to insomnia and depression.  (AR 1137).  She cannot concentrate or focus, cannot stand too

3    long, cannot sit too long, has problems with memory and sleep, and has anxiety.  (AR 1138-39).

4    Plaintiff testified that she has difficulty getting out of bed every day, and "a lot of days" she does

5    not want to get out of bed.  (AR 1141).  She reported she can do household chores for about 10-

6    15 minutes before she becomes overwhelmed, and she must lay down and close her eyes on a

7    daily basis.  (AR 1143).  Plaintiff testified she would not attempt to go out alone.  (AR 1145-46).

8    **III.    STANDARD OF REVIEW**

9       A district court's review of a final decision of the Commissioner of Social Security is

10   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

11   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

12   is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

13   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

14   conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

15   equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

16   citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

17   consider the entire record as a whole rather than searching for supporting evidence in isolation.

18   *Id.*

19       In reviewing a denial of benefits, a district court may not substitute its judgment for that of

20   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

21   to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

22   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

23   harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

24   nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

25   decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

26   U.S. 396, 409-10 (2009).

27    **IV.    SEQUENTIAL EVALUATION PROCESS**

28       The Commissioner has established a multi-step sequential evaluation process for

3

1    determining whether a person's disability has ended.  20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

2    This multi-step continuing disability review process is similar to the five-step sequential

3    evaluation process used to evaluate initial claims, with additional attention as to whether there has

4    been medical improvement.  Compare 20 C.F.R. § 404.1520 and 416.920 with § 404.1594(f) and

5    416.994(b)(5), respectively.  A claimant is disabled only if his impairment is "of such severity

6    that he is not only unable to do his previous work[,] but cannot, considering his age, education,

7    and work experience, engage in any other kind of substantial gainful work which exists in the

8    national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

9        Determination of whether a person's eligibility has ended for disability benefits involves

10    an eight-step process under Title II and a seven-step process under Title XVI.  20 C.F.R. §§

11    404.1594(f)(1)-(8), 416.994(b)(5)(i)-(vii).  The Title XVI process is identical to the Title II

12    process, except for the consideration of substantial gainful activity at the beginning of the

13    disability insurance process and not during the Title XVI process.  These otherwise identical steps

14    are broadly summarized as follows.

15        The first step addresses whether the claimant is engaging in substantial gainful activity.

16    20 C.F.R. §§ 404.1594(f)(1).  If not, step two determines whether the claimant has an impairment

17    or combination of impairments that meet or equal the severity of listed impairments set forth at 20

18    C.F.R. pt. 404, subpt. P, app. 1.  20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).  If the impairment

19    does not equal a listed impairment, the third step addresses whether there has been medical

20    improvement in the claimant's condition.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

21    Medical improvement is "any decrease in the medical severity" of the impairment that was

22    present at the time the individual was disabled or continued to be disabled.  20 C.F.R. §§

23    404.1594(b)(1), 416.994(b)(1)(i).  If there has been medical improvement, at step four, a

24    determination is made whether such improvement is related to the claimant's ability to perform

25    work—that is, whether there has been an increase in the individual's residual functional capacity.

26    20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(iii).  If the answer to step four is yes, the Commissioner

27    skips to step six and inquires whether all of the claimant's current impairments in combination are

28    severe.

1    If there has been no medical improvement or medical improvement is not related to the

2    claimant's ability to work, the evaluation proceeds to step five.  At step five, consideration is

3    given to whether the case meets any of the special exceptions to medical improvement for

4    determining that disability has ceased.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  At step

5    six, if medical improvement is shown to be related to the claimant's ability to work, a

6    determination will be made to assess whether the claimant's current impairments in combination

7    are severe—that is, whether they impose more than a minimal limitation on his physical or mental

8    ability to perform basic work activities.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the

9    answer to that inquiry is yes, at step seven the ALJ must determine whether the claimant can

10    perform past relevant work.  20 C.F.R. §§§ 404.1594(f)(7), 416.994(b)(5)(vi), 416.920(e); *see*

11    *also* SSR 82-61, *available at* 1982 WL 31387.

12    Finally, at step eight, if the claimant cannot perform past relevant work, a limited burden

13    of production shifts to the Commissioner to prove there is alternative work in the national

14    economy that the claimant can perform given his age, education, work experience, and residual

15    functional capacity.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If the claimant cannot

16    perform a significant number of other jobs, he remains disabled despite medical improvement; if,

17    however, he can perform a significant number of other jobs, disability ceases.  *Id*.

18    Prior to the final step, the burden to prove disability and continuing entitlement to

19    disability benefits is on the claimant.  20 C.F.R. § 416.994; *cf. Bowen v. Yuckert*, 482 U.S. 137,

20    146 n. 5 (1987).  The Commissioner must consider all evidence without regard to prior findings

21    and there must be substantial evidence that medical improvement has occurred.  42 U.S.C. §§

22    423(f)(1), 1382c(a)(4).  The Commissioner views the evidence in a continuing disability review

23    from a neutral perspective, without any initial inference as to the existence of disability being

24    drawn from a prior finding of disability.  42 U.S.C. §§ 423(f)(1), 1382c(a)(4).  If the analysis

25    proceeds to step seven, the burden shifts to the Commissioner to establish that (1) the claimant is

26    capable of performing other work; and (2) such work "exists in significant numbers in the

27    national economy."  *Cf. Bowen v. Yuckert*, 482 U.S. at 146 n. 5; and *Beltran v. Astrue*, 700 F.3d

28    386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination).

5

1

## V.     ALJ'S FINDINGS

2          At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

3    since the alleged onset date.  (AR 1098).  Next, the ALJ found that from June 1, 2008 through

4    November 21, 2017, Plaintiff had the following severe impairments: major depressive disorder

5    with psychotic features and anxiety.  (AR 1098).  The ALJ found Plaintiff has not had an

6    impairment or combination of impairments that meets or medically equals the severity of one of

7    the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1 during this time period.  (AR

8    1099).  However, the ALJ then found that from June 1, 2008 through November 21, 2017,

9    Plaintiff had the residual functional capacity (RFC) to "perform medium work as defined in 20

10   CFR 404.1567(c) and 416.967(c) except she: was limited to simple routine repetitive tasks; could

11   not have adapted to workplace changes that are inherent in unskilled work; was limited to low

12   stress (i.e., no high volume production quotas or fast-paced assembly); could have occasionally

13   had contact with coworkers, supervisors, and the general public; could not have done team or

14   tandem work; and would have been off task more than 15% of the workday."  (AR 1099).  The

15   ALJ found Plaintiff was unable to perform past relevant work during this time period (AR 1102),

16   and during this time period, considering Plaintiff's age, education, work experience, and RFC,

17   there were no jobs that existed in significant numbers in the national economy that Plaintiff could

18   have performed.  (AR 1102).  Thus, Plaintiff was under a disability, as defined by the Social

19   Security Act, from June 1, 2008 through November 21, 2017.  (AR 1103).

20          At step two, the ALJ found that beginning November 22, 2017, Plaintiff has not had an

21   impairment or combination of impairments that meets or medically equals the severity of one of

22   the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1.  (AR 1104).  At step three, the

23   ALJ found medical improvement occurred as of November 22, 2017, the date Plaintiff's disability

24   ended.  (AR 1105).  At step four, the ALJ found Plaintiff's medical improvement was related to

25   her ability to work because there has been an increase in Plaintiff's RFC.  (AR 1105).  Thus, the

26   ALJ skipped to step six and found that Plaintiff has not developed any new impairments or

27   impairments since November 22, 2017, the date Plaintiff's disability ended; thus, Plaintiff's

28   severe impairments are the same as those present from June 1, 2008 through November 21, 2017.

1    (AR 1103).  At step seven, the ALJ found that, beginning on November 22, 2017, Plaintiff has

2    had the residual functional capacity (RFC) to

3    
4    
5    
6    
> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except she: is limited to simple routine repetitive tasks; can adapt to workplace changes that are inherent in unskilled work; is limited to low stress (i.e., no high-volume production quotas or fast-paced assembly); can have occasionally [sic] contact with coworkers, supervisors, and the general public; and cannot do team or tandem work.

7    (AR 1106).  The ALJ then determined that Plaintiff is unable to perform past relevant work. (AR

8    1117).  Finally, at step eight, the ALJ found that beginning November 22, 2017, considering

9    Plaintiff's age, education, work experience, and RFC, there have been jobs that exist in

10   significant numbers in the national economy that Plaintiff can perform including laundry worker,

11   cleaner, packer, and sorter.  (AR 1118).  On that basis, the ALJ concluded that Plaintiff's

12   disability ended on November 22, 2017, and Plaintiff has not become disabled again since that

13   date.  (AR 1118).

## VI.    ISSUES

15        Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental

16   security income benefits under Title XVI of the Social Security Act and disability insurance

17   benefits under Title II of the Social Security Act beginning November 22, 2017.  (Doc. No. 1).

18   Plaintiff raises the following issue for this Court's review: whether the ALJ properly considered

19   Plaintiff's subjective symptom testimony.  (Doc. No. 13 at 12-26).

## VII.   DISCUSSION

### A. Symptom Claims

22        An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

23   subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

24   The ALJ first must determine whether there is "objective medical evidence of an underlying

25   impairment which could reasonably be expected to produce the pain or other symptoms alleged."

26   *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment

27   could reasonably be expected to cause the severity of the symptom he has alleged; he need only

28   show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

1    F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

2          Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

3    ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

4    gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

5    1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

6    insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

7    undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

8    1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

9    credibility determination with findings sufficiently specific to permit the court to conclude that

10   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

11   [evidence] standard is the most demanding required in Social Security cases." *Garrison v.*

12   *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

13   F.3d 920, 924 (9th Cir. 2002)).

14         Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

15   be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

16   the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

17   the medical evidence and other evidence in the record" for several reasons.  (AR 1106).  Plaintiff

18   generally argues that "[b]eyond a discussion of the objective medical evidence, it does not appear

19   that the ALJ actually offered any legally sufficient rationale to reject the testimony of [Plaintiff]."

20   (Doc. No. 13 at 16-17 (citing *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("providing a

21   summary of medical evidence in support of a [RFC] finding is not the same as providing clear

22   and convincing reasons for finding the claimant's symptom testimony not credible.")).  This

23   argument is unavailing.

24         First, the ALJ specifically found the longitudinal medical record shows "mostly controlled

25   or episodic hallucination symptoms for which there was never any objective evidence"; and

26   "mostly unremarkable mental status examinations except for mood and affect and a brief period

27   where speech was assessed to be loud and another brief period where she was assessed to be

28   perseverative or ruminative in thought processes or content." (AR 1116).  Medical evidence is a

8

1    relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v.*

2    *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (an ALJ may not discredit a claimant's pain

3    testimony and deny benefits solely because the degree of pain is not supported by objective

4    medical evidence).  Plaintiff argues that "in rejecting the testimony based on the objective

5    evidence the ALJ isolates the record and also mischaracterizes it" because she cites to a "single"

6    2017 Patient Health Questionnaire ("PHQ-9") indicating "mild depression" to reject Plaintiff's

7    testimony.  (Doc. No. 13 at 19 (citing AR 1106, 2591)).  According to Plaintiff, the ALJ

8    "ignored" PHQ-9 scores from February 2016 and June 2017 indicating severe and moderate

9    depression and reported increase in anxiety, and similarly "ignored" treatment notes reflecting

10   Plaintiff's reports of increased depression and moderate to severe PHQ-9 scores in the

11   longitudinal medical record.  (Doc. No. 13 at 20).  Plaintiff is correct that an ALJ may not

12   "cherry-pick[ ]" aspects of the medical record and focus only on those aspects that fail to support

13   a finding of disability.  *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see Holohan v.*

14   *Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (faulting the ALJ's selective reliance on some

15   aspects of the treating records while ignoring other aspects suggestive of a more severe

16   impairment).

17        Here, however, as part of the summary of medical evidence in the decision, the ALJ

18   exhaustively detailed Plaintiff's subjective reports and mental status examinations (MSE) across

19   the relevant adjudicatory period from November 2017 through November 2022, including several

20   treatment notes cited by Plaintiff in support of her argument.  (AR 1106-1116, 1512 (normal MSE

21   aside from down and irritable mood), 1522 (MSE "remained entirely unremarkable"), 1540

22   (normal MSE with deficit only in mood), 1571 (Plaintiff reported improved motivation and

23   energy but low mood and anxiety, MSE remained unremarkable with deficit in mood), 1580

24   (same), 1591 (same), 1605-06 (unremarkable and "normal" MSE, Plaintiff reporting some

25   anhedonia, low motivation, low energy, insomnia, and some anxiety and depression), 1621

26   (same), 1628 (same), 1634 (unremarkable MSE, Plaintiff reporting significant improvement in

27   mood and anxiety), 1654 (mood has stabilized and denies acute symptoms), 1670-71 ("mostly

28   stable" and MSE unremarkable aside from "sad, tearful" mood and labile affect), 1676 (visual

hallucinations "all gone" and mood "mostly good"), 1689-90 (reporting visual hallucinations, MSE unremarkable aside from "stressed mood"), 1707-08 (reporting doing "quite better" and MSE "entirely unremarkable"), 1716 (depression and anxiety assessed as stable), 1725 (same), 1730 ("continues to do well with respect to depressive symptoms"), 1736 (presents in good spirits and good effect with "no acute complaints at this time"), 1741 (reporting improvement in depressive symptoms), 1747 (reporting "happy but tired," good mood and full affect on MSE), 1758 (normal MSE with deficit only in mood and affect "mildly" constricted), 1768 (same), 1789-90 (reporting auditory hallucinations, but MSE unremarkable aside form "slightly irritable" affect), 1794 (Plaintiff reports "mood is well controlled" outside of elevated anxiety due to difficult foster child and sleep is "great" after starting new medication; provider noted Plaintiff "appears capable of maintaining employment should she choose to do so" based on strong communication skills and appropriate concentration and memory), 1824 (reported mood is fine but it is "hard to get out of bed," but provider noting mood does not appear "particularly low"), 1828-29 ("only complaint again was sleep issues," MSE remains unremarkable), 1835-36 (reporting overall stability, mood "good" on MSE), 1849-50 (reporting stable on meds and improved sleep, MSE unremarkable including mood), 1854-55 (reporting stable overall but difficulty with sleep, MSE indicates good mood and full affect), 1860-61 (reporting stable overall, and MSE notable only for mildly constricted affect), 1872 (reporting stable overall with improved sleep), 1877 (MSE intact cognition, attention, memory, and concentration, speech no longer noted to be perseverative or ruminating), 1882 (reports "doing fine," MSE noting "perseverate, rumination" on thought processes, but normal cognition, attention, memory, concentration, insight, and judgment), 1894 ("continues to remain stable"), 1901 (mood and anxiety stable), 1906-07 (reporting doing well, MSE unremarkable aside from tearful affect), 1918 (reporting feeling a lot better and "no reported or clinical evidence of SI or psychosis"), 1929 (reporting "vast improvement in mood"), 2330 (reporting intermittent auditory hallucinations, MSE unremarkable aside from slightly irritable and guarded affect), 2519 (Plaintiff reported "doing alright, more motivated, I'm getting there," and MSE normal aside from mood), 2503 (normal MSE results including mood and affect), 2591 (PHQ-9 indicating mild

1    depression), 2576 (unremarkable MSE, Plaintiff reporting significant improvement in mood and

2    anxiety), 2585 (same).

3          Thus, when viewing the record as a whole, the ALJ explicitly recognized evidence in the

4    record that could be considered favorable to Plaintiff and nonetheless found the severity of her

5    symptom claims, including an inability to get out of bed and struggle to even leave the house,

6    were inconsistent with the objective medical evidence.  (AR 48-52).  "[W]here evidence is

7    susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that

8    must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  This was a clear and

9    convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's

10   symptom claims.

11         Second, the ALJ found "mostly controlled" or only episodic depressive, anxiety

12   symptoms, and hallucination symptoms.  (AR 1116 (also noting the lack of objective evidence for

13   hallucination symptoms)).  The ALJ similarly noted that Plaintiff "also frequently attributed other

14   causes of symptoms and exhibited resistance even to conservative measures, which ultimately

15   provide efficacious when she was cooperative with treatment."  (*Id.*).  A favorable response to

16   treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.

17   *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

18   (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes

19   of determining eligibility for benefits); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir.

20   2007) (evidence of "conservative treatment" is sufficient to discount a claimant's testimony

21   regarding the severity of an impairment).  In support of this finding, as detailed above, the ALJ

22   cited Plaintiff's consistent and ongoing reports throughout the relevant adjudicatory period

23   detailing improvement or "stability" in her symptoms with treatment, in contradiction to Plaintiff'

24   claims of disabling mental limitations.  (*See* AR 1571, 1634, 1676, 1707, 1730, 1736, 1741, 1747,

25   1797, 1849, 1854, 1894, 2519, 2576, 2585).  The ALJ additionally noted "only a few significant

26   changes in medication regimen since early in the period at issue."  (AR 1116).  Plaintiff generally

27   argues, without citation to the record, that "a person who has chronic mental diseases like

28   [Plaintiff] is likely to have better days and worse days" and the "fact that [Plaintiff] could do

1 | somethings [sic] or felt better on some days does not mean she was able to work." (Doc. No. 13

2 | at 18-19). Plaintiff is correct that "it is error to reject a claimant's testimony merely because

3 | symptoms wax and wane in the course of treatment.  Cycles of improvement and debilitating

4 | symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out

5 | a few isolated instances of improvement over a period of months or years and to treat them as a

6 | basis for concluding a claimant is capable of working." *Garrison*, 795 F.3d at 1017.  However, as

7 | discussed above in detail, the ALJ in this case gave a thorough summary of mental status

8 | examinations and Plaintiff's reports chronologically through the relevant adjudicatory period,

9 | including evidence in the record that could be considered more favorable to Plaintiff, (*See* AR

10 | 1571, 1605, 1621, 1628, 1670, 1689, 1789, 1824, 2330), and found her mental health symptoms

11 | were effectively controlled with treatment across the longitudinal record.  *See Burch*, 400 F.3d at

12 | 679.  This was a clear and convincing reason, supported by substantial evidence, for the ALJ to

13 | discount Plaintiff's symptom claims.

14 | Third, the ALJ found Plaintiff's testimony regarding her symptoms since 2017 are

15 | "inconsistent because they are almost entirely at odds with, or highly incongruous with her

16 | repeated statements to her psychiatric treating sources since 2017." (AR 1117).  The Court may

17 | decline to consider this reasoning as it was not identified or challenged by Plaintiff in her opening

18 | brief.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court

19 | may decline to consider issues not raised with specificity in plaintiff's opening brief); *see also*

20 | *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues

21 | not "specifically and distinctly argued" in the party's opening brief).  Regardless, an ALJ may

22 | consider inconsistent statements by a claimant in assessing his or her reported symptom claims.

23 | *Popa v. Berryhill*, 871 F.3d 901, 906 (9th Cir. 2017); 20 C.F.R. §§ 416.929(c)(4), 404.1529(c)(4)

24 | (ALJ may consider inconsistencies in the evidence and "the extent to which there are any

25 | conflicts between" Plaintiff's statements and the rest of the evidence, including statements by

26 | medical sources about how symptoms affect Plaintiff).  Here, the ALJ cited multiple

27 | inconsistencies identified by Plaintiff's providers, including, but not limited to: (1) Plaintiff

28 | "complains of insomnia" but states she sleeps 10-12 hours per night and takes naps during the

1    day, and she is "resistant" to education on sleep hygiene; (2) she reports medication is not helping

2    with sleep but she was notably did not appear "somnolent or fatigued"; (3) she claims poor

3    immediate and remote memory, but "detailed report of encounters with her mother and sister and

4    physicians and therapists in the last 7 days suggests her short-term and immediate memory are

5    appropriate"; and (4) provider offered to increase medication to address reports of poor

6    concentration and memory, however, "patient was able to provide detailed reports of events

7    occurring recently during this visit and immediate and short term memory appeared intact."  (AR

8    1107-09, 1115, 1621, 1794-95 (noting Plaintiff has strong communication skills and appropriate

9    concentration and memory; and opining Plaintiff "appears capable of maintaining employment

10   should she choose to do so"), 2502-04).  Based on the foregoing, inconsistencies between her

11   statements and the rest of the evidence, including statements by medical providers as to how

12   symptoms affect Plaintiff, is a clear, convincing, and unchallenged reason for the ALJ to discount

13   Plaintiff's symptom claims.

14           Fourth, the ALJ found

15               it would seem highly incongruous if the claimant were fostering
                 multiple children during the period at issue, an activity which only
16               recently ended according to the claimant's testimony, that she would
                 have had such poor functioning.  The claimant also reported to
17               sources that she took multiple vacations, traveled to other parts of the
                 state, in addition to traveling to another country for both vacation as
18               well as surgery.  She also indicated to other treating sources that she
                 intended to return to school for a degree program, which she appears
19               to have actually started in the record.  However, her testimony is that
                 she cannot get out of bed, struggles to leave the house, cannot persist
20               for 10-15 minutes in cooking or cleaning, and has anxiety attacks or
                 feels overwhelmed without a reasonable cause.
21
22   (AR 1117).  First, Plaintiff generally argues the "sporadic activities as described in her testimony

23   or in this record, . . . do not contradict her testimony nor do they demonstrate an ability to spend a

24   substantial part of the day doing activities transferable to a work setting."  (Doc. No. 13 at 22).  A

25   claimant need not be utterly incapacitated in order to be eligible for benefits.  *Fair v. Bowen,* 885

26   F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) ("the

27   mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her

28   credibility as to her overall disability.").  However, even where daily activities "suggest some

1    difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the

2    extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674

3    F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by*

4    20 C.F.R. § 416.920(a).  In support of this finding, the ALJ cites evidence throughout the record

5    of Plaintiff's ability to provide foster care to multiple children, travel abroad, keep herself busy

6    and stay active, attend school, and attempt part-time work.[3]  (AR 1115-17, 1794 (reporting more

7    stressed because caring for difficult foster child at that time), 1795 (reporting she fosters 1-2

8    children regularly), 1802 (Plaintiff unable to talk to treating provider because she "was running

9    errands and was driving" and she was "too busy" to pull over for the visit), 1929 (visiting

10   daughters in LA and week-long trip to Tijuana), 2502 (ALJ noting babysitting nephew and niece

11   inconsistent with complaints of anhedonia), 3314 (noting employer needed negative COVID test

12   for Plaintiff to return to work)); *see Rollins*, 261 F.3d at 857 (plaintiff's ability to care for young

13   children without help may undermine claims of totally disabling symptoms).

14           Plaintiff further contends that the ALJ "excludes from the analysis" that she "performs

15   activities for a limited time," and, without citation to the record, Plaintiff argues her daily

16   activities are "not so extensive on their own to clearly undermine Plaintiff's testimony and

17   statements without further explanation."   (Doc. No. 13 at 22-25).  However, in support of this

18   argument, Plaintiff relies almost entirely on hearing testimony and function reports from 2010

19   and hearing testimony from 2015, well before the relevant adjudicatory period beginning

20   November 22, 2017.  (*Id*. (citing AR 51-62, 203-10, 696-709, 1137-38 (citing testimony from the

21   relevant period that Plaintiff's depression "literally blocked [her] from trying to do anything that I

22   needed to do to get through on a daily basis")).  Moreover, regardless of evidence that could be

23   viewed more favorably to Plaintiff, it was reasonable for the ALJ to find that Plaintiff's own

24

25   [3] Plaintiff argues the ALJ improperly relied on her failed work attempt in discounting her symptom claims.
     (Doc. No. 13 at 23-24).  Plaintiff is correct that "[i]t does not follow from the fact that a claimant tried to
     work for a short period of time and, because of his impairments, failed, that he did not then experience

26   pain and limitations severe enough to preclude him from maintaining substantial gainful employment."
     *Lingenfelter*, 504 F.3d at 1038.  However, to the extent the ALJ relied on Plaintiff's unsuccessful work

27   attempt in discounting her subjective testimony, any error would be harmless because as discussed in
     detail above, the ALJ's ultimate rejection of Plaintiff's symptom claims because they were inconsistent

28   with her daily activities was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

1   reports to medical providers that she has cared for multiple foster children, travels, and keeps

2   herself busy, was inconsistent with the severity of her allegations that she is unable to get out of

3   bed, struggles to leave the house, and cannot clean or cook for more than 10-15 minutes.  (*See* AR

4   1140-41, 1143); *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting

5   Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment);

6   *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from

7   evidence); *Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation,

8   the ALJ's conclusion must be upheld).

9         The Court concludes that the ALJ provided clear and convincing reasons, supported by

10   substantial evidence, for rejecting Plaintiff's symptom claims.

## VIII.   CONCLUSION

12         A reviewing court should not substitute its assessment of the evidence for the ALJ's.

13   *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

14   as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail

15   above, the ALJ properly considered Plaintiff's symptom claims.  After review, the Court finds the

16   ALJ's decision is supported by substantial evidence and free of harmful legal error.

17         Accordingly, it is **ORDERED**:

18         1.   Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED.

19         2.   Defendant's Cross Motion for Summary Judgment (Doc. No. 18) is GRANTED and

20              the decision of the Commissioner of Social Security is AFFIRMED for the reasons set

21              forth above.

22         3.   The Clerk is directed to enter judgment in favor of the Commissioner of Social

23              Security, terminate any pending motions/deadlines, and close this case.

24

25   Dated:   __July 31, 2024__

26                                              HELENA M. BARCH-KUCHTA
                                                UNITED STATES MAGISTRATE JUDGE
27

28